

# NUMBER 13-24-00335-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MITCHELL TREVINO,**                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                   **Appellee.**

---

## ON APPEAL FROM THE 476TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West**
**Memorandum Opinion by Justice West**

A jury convicted Mitchell Trevino (Trevino) of two counts of intoxication manslaughter and one count of intoxication assault. *See* TEX. PENAL CODE §§ 49.09(b-1)(1), (b-2), 49.08(b). By two issues which we construe as one, Trevino argues the trial court should have excluded entire categories of evidence related to matters he offered to

stipulate: (1) he was intoxicated, (2) there were two fatalities, and (3) one person suffered serious bodily injury. We affirm.

## I.     BACKGROUND

In December 2018, Trevino collided with the rear of a vehicle traveling in front of him, crossed into an oncoming lane of traffic, and hit an ambulance head on. The ambulance driver was killed, a patient was killed, and an emergency medical technician (EMT) was injured. Prior to the commencement of trial, Trevino offered to stipulate that he was intoxicated, there were two fatalities, and one person suffered serious bodily injury. The State did not accept Trevino's offer to stipulate in lieu of presenting evidence. However, Trevino argued that, given his offer to stipulate, the trial only needed to resolve causation. And regarding such, he asserted that the driver of the vehicle he initially collided with was the cause of the accident. Trevino then requested that the trial court exclude all evidence related to his offered stipulations. The trial court denied the stipulations and Trevino's request for the "blanket" exclusion of evidence.

The jury assessed imprisonment on the counts at thirty years, twenty years, and ten years respectively. The trial court ordered the first two sentences to run concurrently but ordered the ten-year sentence to run consecutively to the thirty-year sentence. This appeal ensued.

## II.     STANDARD OF REVIEW & APPLICABLE LAW

Texas Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID. 403. A trial court's decisions to admit or exclude evidence are reviewed for abuse of discretion. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). We will not

2

reverse the trial court "except where there has been a clear abuse of discretion falling outside the zone of reasonable disagreement." *Id.* (quotation omitted).

## III. DISCUSSION

On appeal, Trevino argues that his offer to stipulate could not be rejected, and his stipulation removed any contested issues involving his intoxication, two deaths, and one bodily injury. Thus, he argues, the probative value of any evidence admitted related to those categories is substantially outweighed by a danger of unfair prejudice under Rule 403. *See* TEX. R. EVID. 403. He further argues that he was harmed by the trial court's ruling because the following evidence was submitted to the jury:

- Law enforcement testimony about their observations of the scene upon arrival, including that the ambulance driver appeared dead, a woman fell from the ambulance when the door was opened, and Trevino's tire went through the ambulance's windshield.

- Surveillance videos of (1) the accident and (2) Trevino purchasing beer, cigarettes, and paper plates before the accident.

- Officer testimony related to scene integrity.

- Body-camera footage showing Trevino's blood being drawn.

- The phlebotomist's testimony that she drew Trevino's blood.

- The forensic scientist's testimony on Trevino's blood alcohol test results and the effects of alcohol on the central nervous system.

- Testimony from an accident reconstructionist.

- The medical examiner's testimony about the autopsy report.

- Autopsy photos.

3

- The injured EMT's testimony.[1]

Trevino cites several cases in support of his issue. However, each cited case involves a defendant's stipulation to a *prior conviction* where such was an element of the offense at issue. *See Bryant v. State*, 187 S.W.3d 397, 401 (Tex. Crim. App. 2005) (involving stipulation to prior conviction); *Hernandez v. State*, 109 S.W.3d 491, 495 (Tex. Crim. App. 2003) (same); *Robles v. State*, 85 S.W.3d 211, 214 (Tex. Crim. App. 2002) (same); *Tamez v. State*, 11 S.W.3d 198, 203 (Tex. Crim. App. 2000) (same); *Taylor v. State*, 442 S.W.3d 747, 751 (Tex. App.—Amarillo 2014, pet. ref'd); *see also Ex parte Thompson*, No. 13-06-290-CR, 2007 WL 2459978, at *10 (Tex. App.—Corpus Christi–Edinburg Aug. 30, 2007, no pet.) (mem. op., not designated for publication) (same). We agree that when a defendant's prior conviction(s) is a required element of the charged offense, and the defendant offers to stipulate to the prior conviction(s), the State is required to accept the stipulation and is prohibited from presenting any evidence related to the prior conviction(s). *See Perkins v. State*, 664 S.W.3d 209, 215 (Tex. Crim. App. 2022). If such were not the case, there is a substantial risk that the jury could convict the defendant not because of the present offense but because of facts related to prior offense(s) for which the defendant was already once convicted. *See id.*

However, the present case does not involve stipulations to *prior convictions* and thus is not governed by the cases proposed by Trevino. Rather, Trevino argues that evidence related to the *offenses at issue* (intoxication manslaughter and intoxication assault) are automatically barred by his general stipulations. We disagree.

---

[1] Trevino merely cites law and proffers argument that his offered stipulations required categorical exclusion of evidence. He does not address objections to specific pieces of evidence, so those issues are not before us.

*Old Chief v. United States* is the seminal case establishing that the federal counterpart to Rule 403 categorically excludes all evidence related to a defendant's prior convicted status once stipulated to. *See* 519 U.S. 172, 191–92 (1997). The Texas Court of Criminal Appeals expressly relied on *Old Chief* and held the same with respect to Rule 403 in *Tamez* and its progeny. *See Tamez*, 11 S.W.3d at 203; *see also Bryant*, 187 S.W.3d at 401; *Hernandez*, 109 S.W.3d at 495; *Robles*, 85 S.W.3d at 214. Notably, *Old Chief* provides instructive guidance for the present case. *See* 519 U.S. at 193. *Old Chief* expressly limited its categorial exclusion to evidence of prior convictions. *See id.* at 191–92 (providing "this will be the general rule when proof of convict status is at issue"). In doing so, the United States Supreme Court acknowledged that—outside of convict status stipulations—the general rule is that "the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id.* at 186–87. In rationalizing this rule, the Court opined:

> The "fair and legitimate weight" of conventional evidence showing individual thoughts and acts amounting to a crime reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness. Unlike an abstract premise, whose force depends on going precisely to a particular step in a course of reasoning, a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once; the account of a shooting that establishes capacity and causation may tell just as much about the triggerman's motive and intent. Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them. Jury duty is usually unsought and sometimes resisted, and it may be as difficult for one juror suddenly to face the findings that can send another human

5

being to prison, as it is for another to hold out conscientiously for acquittal. When a juror's duty does seem hard, the evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment. Thus, the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault.

*Id.* at 187–88.

Here, Trevino cannot "stipulate or admit his way out of the full evidentiary force of the case as the [state chose] chooses to present it." *See id.* at 186–87. While the State's evidence is certainly necessary for definitionally proving the elements of an offense, that is not the only role of such evidence. *See id.* at 187–88. Evidence also plays a role in providing human jurors what stipulations cannot: narratives, complexity, ability to draw inferences, and connection to human experience. *See id.* Here, Trevino's abstract stipulations lacked the "colorful story with descriptive richness" that "testimony and tangible things" supply. *See id.* at 187. Evidence, in contrast to Trevino's stipulations, tell "a narrative [that] gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences." *See id.* Given that jurors are often resistant to jury duty and specifically sitting in judgment, the "persuasive power" of evidence does what no stipulation can: it not only "prov[es] a fact but . . . establish[es] human significance." *See id.* Thus, the State was entitled to prove its case with the evidence of its choice. *See id.* at 186–87.

Moreover, in *Perkins v. State*, the Texas Court of Criminal Appeals provided that *Old Chief*'s and *Tamez*'s holdings merely bar evidence related to stipulations to *prior*

6

*convictions* that must be proved as an element of the present offense. *Perkins*, 664 S.W.3d at 216. The *Perkins* court specifically found that where a defendant was charged with aggravated assault, *Old Chief* and *Tamez* did not bar evidence—related to another unadjudicated assault committed by the defendant—that was presented by the prosecution to show motive, intent, absence of mistake, or lack of accident. *Id.* at 212, 216. Likewise here, the evidence Trevino sought to exclude was not related to a prior conviction that is an element of a present offense.

For the foregoing reasons, the trial court did not abuse its discretion by denying Trevino's request to categorically exclude all evidence related to his proffered stipulations. We overrule Trevino's sole issue that Rule 403—in conjunction with his stipulations— requires categorical exclusion of all evidence related to (1) intoxication, (2) two deaths, and (3) serious bodily injury. *See* TEX. R. EVID. 403.[2]

---

[2] We also note that during voir dire, Trevino stressed that one picture is insufficient proof to identify the item depicted (i.e., a picture alone could not distinguish between a toy gun and a real gun). Trevino also elicited statements from the venire that in a case involving a "drunk driver" accident investigation, (1) they "expect" to see police reports, blood tests, BAC levels, photographs, medical records, identification of parties involved, statements from all parties involved, witnesses, statements from witnesses, weather conditions, road hazards, cell phones, date and time, as well as number of people in the vehicles; and (2) a failure to include these items would make the investigation "incomplete." Consistent with this theme, during opening argument Trevino stated "this case will show you that Edinburg Police Department did not, did not follow their duty to investigate. It will clearly show, clearly show you that they did not do their job." In other words, Trevino argued to the jury that the police conducted an insufficient investigation but while outside their presence, sought categorical exclusion of evidence gathered by police. To the extent any of the evidence was prejudicial, such harm was invited by Trevino's voir dire and opening statement, which opened the door by suggesting lack of presentation of certain evidence would render the investigation incomplete or insufficient. *See Wood v. State*, 478 S.W.2d 513, 516 (Tex. Crim. App. 1972) ("It should be noted that, once the defendant 'opens the door' through his own statements, he should be aware that the horses are going to get loose."); *see also Walder v. United States*, 347 U.S. 62, 65 (1954) (providing that even where law enforcement unlawfully seizes evidence, such evidence may come in when the defendant seeks to exploit the government's inability to admit the evidence by contradicting it on direct examination).

## IV.  CONCLUSION

We affirm.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
19th day of March, 2026.

8